IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JEREMIAH A. D.[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 25-cv-1792-RJD[2] |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM and ORDER**

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to 42 U.S.C. § 423.

**Procedural History**

Plaintiff applied for disability insurance benefits and supplemental security income in 2022, alleging a disability onset date of July 15, 2022. (Tr. 4). He alleged a variety of physical and mental conditions, including depression, anxiety, and Meniere's disease. (Tr. 248). Plaintiff failed to prove disability at the initial and reconsideration levels and requested a hearing before an ALJ, which was held in July 2024. (Tr. 4, 38). On August 30, 2024, the ALJ found Plaintiff not disabled, and the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 4–21, 27).

[1] Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.
[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. § 636(c). (Doc. 9).

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. Whether the ALJ's assessment of the psychological consultative examiner's opinion violated 20 C.F.R. § 404.1520c and the logical bridge requirement;

2. Whether the ALJ's symptom evaluation violated SSR 16-3p; and

3. Whether the ALJ's Residual Functional Capacity ("RFC") Assessment Violated SSR 96-8p.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statute.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step 3 or step 5 leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step 3, precludes a finding of disability. The

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, *et seq.*, and 20 C.F.R. Pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, *et seq.*, and 20 C.F.R. Pt. 416. As is relevant to this case, the DIB and SSI statutes and regulations are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. Most citations herein are to the DIB regulations out of convenience.

plaintiff bears the burden of proof at steps 1–4. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

Importantly, the Court's scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but the Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. *See Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), *as amended on reh'g in part* (May 12, 2010), and cases cited therein.

**The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. The ALJ found that Plaintiff had severe cervical degenerative disc disease with radiculopathy, psoriasis/psoriatic arthritis, diabetes mellitus with peripheral neuropathy, obesity, Meniere's disease, major

depressive disorder without psychotic features, generalized anxiety disorder, panic disorder with agoraphobia, and social anxiety disorder. (Tr. 7). The ALJ found that Plaintiff had the residual functional capacity to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he should never climb ladders, ropes, of scaffolds, but he can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to vibrations and hazards as they are defined in the Selected Characteristics of Occupations (SCO) of the Dictionary of Occupational Titles (DOT). He is further limited to working in no more than a class III moderate noise environment. The claimant can understand, remember, and carry out detailed but not complex tasks. He can deal with occasional interactions with the public, coworkers, and supervisors.

(Tr. 11). The ALJ concluded that Plaintiff had not been under a disability, as a significant number of jobs existed in the national economy that he could perform, at positions including marker, garment sorter, and laundry classifier. (Tr. 20).

## The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary is directed to the points raised by Plaintiff. Additional relevant records are also detailed in the Court's discussion of the ALJ's decision.

### 1. Plaintiff's Agency Forms and Testimony

Plaintiff testified via video at a hearing before the ALJ on July 11, 2024. (Tr. 40-79). Plaintiff is currently married and lives with his spouse in a rental home. (*Id.*; Tr. 11). He has a driver's license, but he rarely drives and only for short distances due to dizziness. (*Id.*). He has health insurance. (*Id.*). He has not worked for two years due to complications with his physical and mental health after an injury and a mental health episode requiring hospitalization (*Id.*).

Plaintiff testified he is currently unable to work because of his Meniere's disease that causes him a "multitude of issues," including daily dizziness that affects his ability to stand or be on his feet for long periods. (*Id.*). He has good days and bad days. (*Id.*). On good days, he just has a bit of stumbling, but for two to three days a week he struggles to get out of bed, and he will stumble just getting to the bathroom. (*Id.*). If he falls, he has trouble getting back up. When he experiences the "drop attacks," he blacks out and loses all sense of balance. (*Id.*). These episodes occur one to two times a month and can last from two hours to all day. (*Id.*). He said the vertigo can get so bad he is unable to stand. He said his dizziness makes it hard for him to focus.

He reported doing "*light* housework," such as cooking, dishes, or sweeping, three days a week when he is able, but one day per week he cannot get out of bed beyond going to the bathroom. (Tr. 63, 272). He testified that when he does those chores he "can spend 30 minutes and then take an hour long break . . . to sit down and recover." (Tr. 63). He "tri[es] to cook dinner as part of [his] light housework, usually something simple," four to five times a week, which takes him over an hour even for simple meals. (Tr. 273). Further, on bad days, he needs help from his wife to bathe and dress due to dizziness. (Tr. 272). Plaintiff testified that he drives "very rarely and short distance," because he is scared to drive due to his dizziness. (Tr. 50-51). In those rare cases, he drives "a couple blocks down a back road to the grocery store." (*Id.*). He testified that the farthest he walked the year before the hearing was "maybe a quarter mile" to his local Dollar General to get groceries. (Tr. 62). He added that once he arrived there, he had to take a ten-minute break outside, do the shopping, and then walk back. (*Id.*).

Mentally, Plaintiff testified he struggles with depression that worsens his anxiety and insomnia. (Tr. 11; 40-79). It can affect his sleep and focus. (*Id.*). He has constant ruminating

thoughts, and his anxiety can get so bad that he fears leaving his home. (*Id.*). His focus and ability to stay on task are affected by his anxiety. (*Id.*). He has issues interacting with others due to social anxiety. (*Id.*).

He takes Effexor and Wellbutrin for his depression and Gabapentin for his anxiety and neuropathy (*Id.*). He has a prescription for Valium that he takes when he is having a panic attack. (*Id.*). He takes 800 milligrams of Ibuprofen for pain, and occasionally uses cannabis to help manage his pain and anxiety. (*Id.*).

**2. <u>Medical Opinions</u>**

In June 2023, Plaintiff underwent a psychiatric evaluation with Ana A. Gil, M.D. (Tr. 772-77.) Dr. Gil observed that Plaintiff's affect was sad and restricted and his mood was moderately depressed. (Tr. 774). Dr. Gil opined that Plaintiff had moderate to severe impairment in socially interacting with others and in adapting to changes in his environment. (Tr. 776-77).

At the initial level in July 2023, non-examining State agency psychological consultant Margaret DiFonso, Psy.D., opined that Plaintiff had moderate limitations in carrying out detailed instructions, maintaining attention and concentration for extended periods, interacting appropriately with the general public, and accepting instructions and responding appropriately to criticism from supervisors. (Tr. 87.) He was capable of simple as well as more than simple but not complex duties with modified social demands. (Tr. 87.) Moderate social limitations were recommended. (Tr. 87.) Reviewer Robert Vautrain, M.D. also opined in July 2023 that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently and could sit, stand, and walk for six hours out of the workday. (Tr. 86.) At the reconsideration level in January 2024, Steven Fritz, Psy.D., affirmed Dr. Difonso's opinion. (Tr. 108.) Jennifer Western, M.D. affirmed Dr. Vautrain's opinion. (Tr. 106.)

**Analysis**

Plaintiff challenges several aspects of the ALJ's decisions. Having reviewed the record, the Court finds that remand is warranted at least as to the ALJ's assessment of Plaintiff's symptoms related to dizziness and unbalance and the formulation of Plaintiff's RFC on that ground. Accordingly, the Court will not need to discuss the remaining grounds for reversal.

An ALJ's assessment of a claimant's reports regarding the "intensity, persistence, and limiting effects of" her subjective symptoms will not be disturbed unless it is "patently wrong," meaning that it "lacks any explanation or support." *Weber v. Kijakazi*, No. 20-2990, 2021 WL 3671235, at *5 (7th Cir. Aug. 19, 2021) (citation and internal quotation marks omitted). At the same time, when that assessment rests on "objective factors or fundamental implausibilities rather than subjective considerations," such as the demeanor of the claimant, the court has "greater freedom to review" that assessment. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citation and internal quotation marks omitted). An ALJ must "adequately explain" whether the claimant's report of subjective symptoms is persuasive or not and discuss "specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (superseding SSR 96-7p). Although an ALJ does not need "to address every piece of evidence," some legitimate reason must be articulated to establish an "accurate and logical bridge from the evidence to [the] conclusion." *Clifford*, 227 F.3d at 872 (citation omitted).

Here, the ALJ found:

> The claimant testified that currently he is unable to work due to significant dizziness and balance issues caused by his Meniere's disease. He said he has several days a

> week that are so bad he is unable to move and that he has "drop down" episodes 1-2 times a month where he blacks out and falls over (Hearing Testimony). However, the claimant does not relate this level of extreme limitation to his own treating physicians and has not presented with any sequelae of falls. He reports increasing dizziness in October 2023 and was prescribed Meclizine and referred to an ENT, who apparently put the claimant on a diuretic he was unable to continue taking. Despite suggesting that stopping the diuretic increased his dizziness, he never followed up with his ENT, strongly suggesting the symptoms were not as severe as alleged, and he never mentions his dizziness being so bad he is incapable of functioning or is blacking out (See Exs. 20F; 21F). Moreover, the claimant suggests this dizziness occurs daily, but he is still able to cook and complete household chores. He is able to walk to the Dollar General and sometimes drive (Hearing Testimony). He informed Dr. Gil in June 2023 that he spent much of his time on the computer playing video games and talking with friends (Ex. 9F). Dr. Feinerman does not observe any balance issues on examination, and the claimant's own medical sources, including the neurologist, have not observed balance issues. His gait was normal at his May 2024 neurology consultation (Ex. 20F). The undersigned acknowledges the positive finding on Rinne Testing at the claimant's consultative examination, and his diagnosis for Meniere's, and has limited the claimant's exposure to ladders, ropes, or scaffolds, his postural activity, including balance, and his exposure to hazards as a precautionary measure against his complaints of dizziness.
>
> However, greater limitation is not supported by the objective evidence, which fails to back up the claimant's extreme subjective complaints, and greater limitation is not consistent with his demonstrated ability to engage in a wide variety of daily activities.

(Tr. 17-18). Accordingly, the ALJ relied on the following evidence to assess Plaintiff's subjective reports related to Meniere's disease: (a) lack of support by the medical records as to the severe reported impairments; (b) failure to comply with treatment or follow up with his ENT; (c) inconsistency with ability to engage in wide variety of daily activites; and (d) lack of objective medical evidence. The Court finds that the ALJ misrepresented the record on many of those categories, and that the compound effect of those misrepresentations warrants remand.

First, the ALJ was only partially correct in his conclusion that Plaintiff did not relay to his providers the reported severe impairments associated with Meniere's disease, dizziness, and

balance issues. It is true that Plaintiff's medical records do not show "drop down" episodes one to two times a month with blackouts and falls. However, a fair review of the record shows that Plaintiff's testimony as to daily dizziness with need to lie down does not conflict with his reports to his providers. The ALJ failed to acknowledge Plaintiff's reports to his provider in October 2023 that he was having dizziness almost daily, for which he needed to lie down, and that he sometimes took Dramamine for motion sickness. (Compare Tr. 16, with Tr. 810). Likewise, while the ALJ referenced Plaintiff's complaints of dizzy episodes in April 2024 that returned two years ago, he omitted Plaintiff's specific reports of "*often* aural fullness with dizzy episodes on his right ear" as well as spinning vertigo. (Compare Tr. 16, with Tr. 731, emphasis added). This is important because, while an ALJ does not need to mention every piece of evidence, he also "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009)).

The ALJ acknowledged Plaintiff's reports in June 2024 of increased dizziness and imbalance that made it hard for him to stand, drive, or function. (Tr. 965, 980). He also noted that Plaintiff was thereafter referred to an ENT who put the claimant on a diuretic to address his dizziness. (Tr. 16). Yet, the ALJ completely discredited that evidence because thereafter Plaintiff discontinued the diuretic due to nausea and vomiting but failed to follow up with his ENT despite reporting intensified dizziness without the medication. He concluded that Plaintiff's failure to follow up "strongly suggest[ed] the symptoms were not as severe as alleged." (Tr. 16). This is speculative and even more problematic as the Seventh Circuit has repeatedly cautioned against drawing any inferences as to a claimant's symptoms from a lack of care unless the ALJ explores

the claimant's explanations. *See Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir. 2008); *White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence").

Here, as Plaintiff correctly points out, the record shows that due to his mental health issues, he struggled to call back and reschedule medical appointments and that, in the past, he had struggled with the motivation to follow up with his providers. (Tr. 66). The record shows that in 2022, he reported that leaving home made him very anxious, and he was out of medications for four days as he felt unable to call for refills. (Tr. 595). Further, in January 2023, Plaintiff reported not returning to his counselor as he had trouble with his finances and transportation. (Tr. 837). Yet, the ALJ did not consider those reasons when he concluded that Plaintiff's failure to follow up with his ENT "strongly suggest[ed the] symptoms were not as severe as alleged." This not only goes against the Seventh Circuit's established precedent but also contravenes the agency's regulations. *See* SSR 16-3p (directing SSA to not find a claimant's symptoms inconsistent with the record without considering possible reasons for treatment noncompliance, and requiring the SSA to "consider and address reasons for not pursuing treatment that are pertinent to an individual's case" and "explain how [it] considered the individual's reasons in evaluation of the individual's symptoms).

The Commisioner counters that any such error was harmless because the ALJ also relied on other forms of evidence in assessing Plaintiff's reported symptoms. (Doc. 21, p. 21, n.4, citing *Kittelson v. Astrue*, 362 F. App'x 553, 558 (7th Cir. 2010); *Nicholson v. Astrue*, 341 F. App'x 248, 252 (7th Cir. 2009)). While this is correct, as already indicated and will be further detailed below, the ALJ's assessment of Plaintiff's Meniere's disease-related symptoms contained several errors

that, in combination, deprived the ALJ's assessment of Plaintiff's reports of dizziness and unbalance of an adequate explanation or support.

The ALJ's discussion of Plaintiff's reported daily activities to discredit his reports as to the severity of his dizziness is also erroneous in that the ALJ failed to assess the qualifications of Plaintiff's daily activities. "An ALJ cannot disregard a claimant's limitations in performing household activities." *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) (citing *Craft,* 539 F.3d at 680; *Mendez v. Barnhart,* 439 F.3d 360, 362 (7th Cir. 2006)).

Here, the ALJ noted that despite Plaintiff's reports of daily dizziness, he is "still able to cook and complete household chores,"[h]e is able to walk to the Dollar General and sometimes drive," and "in June 2023 that he spent much of his time on the computer playing video games and talking with friends." (Tr. 17). But Plaintiff stated that he did "*light* housework," such as cooking, dishes, or sweeping, three days a week when he had the ability, but one day per week he could not get out of bed beyond going to the bathroom. (Tr. 63, 272). He testified that when he does those chores he "can spend 30 minutes and then take an hour long break . . . to sit down and recover." (Tr. 63). He "tri[es] to cook dinner as part of [his] light housework, usually something simple," four to five times a week, which takes him over an hour even for simple meals. (Tr. 273). Further, on bad days, he needed help from his wife to bathe and dress due to dizziness. (Tr. 272). Plaintiff testified that he drives "very rarely and short distance," because he is scared to drive due to his dizziness. (Tr. 50-51). In those rare cases, he drives "a couple blocks down a back road to the grocery store." He testified that the farthest he walked within a year from the hearing was "maybe a quarter mile" to his local Dollar General to get groceries. (Tr. 62). He added that once he arrived there, he had to take a ten-minute break outside, do the shopping, and then walk back. (*Id.*).

Likewise, Plaintiff reported that he "has a few close friends whom he talks with on the computer," that he "sits at the computer most of his days, [h]e listens to some music," and "[h]e'll play video games." (Tr. 774). This again is materially different from the ALJ's finding that Plaintiff "spent much of his time on the computer playing video games and talking with friends." (Tr. 16).

Overall, the ALJ materially mischaracterized Plaintiff's daily activities. Taking into account the reported qualifications, those activities are not necessarily inconsistent with Plaintiff's reports of daily dizziness: Plaintiff never reported constant dizziness throughout the day. He explained that he has good and bad days, with his symptoms on the good days being limited "to a bit of stumbling." (Tr. 12). Likewise, the ALJ did not explain why sitting at his computer was inconsistent with Plaintiff's dizziness-related symptoms on his good days. *See Bauer v. Astrue,* 532 F.3d 606, 608 (7th Cir. 2008) (noting that ALJs need to assess evidence of periods of good and poor functionality); *Danniel W. B. v. Comm'r of Soc. Sec.,* 2021 WL 4290771, at *8 (S.D. Ill. Sept. 21, 2021) ("Once again, the ALJ has improperly focused on the records that reflect Plaintiff's good days").

Contrary to the Commissioner's assertion, this is not a harmless error. Based on the above discussion, the only possible articulation left to support the ALJ's assessment of Plaintiff's dizziness-related symptoms was the lack of objective findings. Yet, the fact that the medical providers did not observe unbalance or observed normal gait during their examinations is not inherently inconsistent with Plaintiff's report of his more limited symptoms during good days. Further, the ALJ emphasized his consideration of Plaintiff's "ability to engage in a wide variety of daily activities" in formulating his RFC and rejecting the need for "greater limitations" relating to Plaintiff's dizziness. (Tr. 17; *see also* Tr. 16, noting that [t]he claimant's testimony and reports

of daily activities do not clearly support a finding that his functioning is reduced below the functional level indicated in the residual functional capacity."). But as explained, the ALJ materially mischaracterized and overstated those activities of daily living. The Seventh Circuit has repeatedly criticized ALJs "for equating activities of daily living with an ability to engage in full-time work." *Shumaker v. Colvin*, 632 F. App'x 861, 866 (7th Cir. 2015) (collecting relevant cases). Accordingly, the Court finds that the ALJ's assessment of Plaintiff's reports regarding the intensity, persistence, and limiting effects of Plaintiff's reported dizziness and imbalance was patently wrong, and that the ALJ failed to build an accurate and logical bridge between his findings and the RFC formulation.

Because remand under those grounds is warranted, the Court does not need to reach Plaintiff's remaining arguments. On remand, the ALJ should consider all arguments raised afresh, taking into account the entire record.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for disability insurance benefits and supplemental security income is **REVERSED** and **REMANDED** to the Commissioner for rehearing and consideration of the evidence, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: September 1, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**